■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIGITTE JEFFRIES, Also Known as BRIGETTE JEFFRIES, Appellant.—Judgment, Supreme Court, New York County (Leff, J., at plea and sentence), rendered May 28, 1987, convicting defendant of two counts of manslaughter in the first degree and sentencing her to two concurrent terms of 8⅓ to 25 years in prison, unanimously modified, as a matter of discretion in the interest of justice, to the extent of reducing her sentence to two concurrent terms of 5 to 15 years in prison, and otherwise affirmed.

We are of the view that under the facts of this case, the sentence imposed, while legal, was unduly harsh and severe. (CPL 470.15 [6] [b].) The events both prior and subsequent to the incident, in which defendant asphyxiated her two young daughters, Rashida Howard, age eight, and Tessia Jeffries, age four, are heartrending. Defendant, who had no prior criminal record, and whom the prosecutor described as a "competent and loving mother whose daughters were healthy and well adjusted", suffered from auditory hallucinations and depressions so severe that she was suicidal for nearly a year prior to the incident. She lived in great poverty and had no hope that she could provide a better life for her daughters.

Believing that life was unbearable, she resolved to kill herself. However, because she did not want to abandon her girls and have them placed in a foster home, she decided to kill them too; she told one of the psychiatrists who subsequently examined her that this way "the children would be better off, its heaven we are talking about." She explained this to her daughters and told them of her plan. She then held plastic bags over their heads until they ceased breathing; however, before she could kill herself, her mother arrived at the apartment.

Defendant made a full statement to the police, expressing how despondent she had become and repeatedly asking for the death penalty, so she could join her daughters in heaven.

Defendant was charged with two counts of murder in the second degree. Three of the four psychiatrists who examined her found her fit to stand trial but observed that defendant believed she had a personal relationship with God and Jesus

Christ, and, in fact, suffered from auditory hallucinations in which she heard God and Jesus Christ speaking to her. Moreover, two doctors concluded that, regardless of her fitness to stand trial, defendant could not be held criminally responsible for her acts.

Defendant ultimately pleaded guilty to two counts of manslaughter in the first degree in satisfaction of the indictment. The court noted that had there been a trial, the essential question would have been whether defendant had the necessary mental capacity to be found guilty of criminal conduct; this may well have resulted in a resounding no, in view of the psychiatric evidence. The court subsequently sentenced defendant, in accordance with the prenegotiated plea bargain, to two concurrent terms of 8⅓ to 25 years' incarceration. However, in doing so, the court stated, on the record, that under the tragic circumstances of the case, "no purpose enumerated in the Penal Law [is] remotely served by the imposition of this sentence." We agree and hold that under the circumstances of this case, the sentence imposed was excessive.

Accordingly, we modify, in the interest of justice, to the extent of reducing defendant's sentence for this isolated incident to a term of 5 to 15 years, as it is within our province to do. (People v Thompson, 60 NY2d 513, 519-521 [1983]; CPL 470.15 [6] [b].) Concur—Murphy, P. J., Carro, Kassal, Milonas and Wallach, JJ.