■ The People of the State of New York, Respondent, v Abelino Reyes, Appellant. [931 NYS2d 601]—

As a young boy in his native Dominican Republic, the now 57-year-old defendant sustained unspeakable abuses, solely for participating in peaceful protests against government shortages. During that time defendant was beaten, tortured, and placed in solitary confinement. At age 15, he began hearing voices.

Defendant migrated to the United States in 1996. Shortly after, he suffered a mental breakdown and became suicidal. Defendant was hospitalized on three separate occasions during the 2003-2004 period, first at North Central Bronx, then at New York Presbyterian and Metropolitan Hospital.

The month before the incident, defendant suffered the death of his beloved mother. After his mother's funeral, he visited his psychiatrist. He had been off his medications for one week because he could not afford to fill his prescription after it had been declined by Medicaid. Defendant's doctor provided him with a generic version of the drug, but defendant stopped taking it after experiencing a bad reaction to the substitute medication. Defendant's mental condition deteriorated to such a degree that he suffered a psychotic break that compelled him to act upon the voices commanding him to kill.

After his arrest, defendant was treated and evaluated at New York Presbyterian, Bellevue Hospital's Prison Ward and the Kirby Forensic Psychiatric Center. The Bellevue staff indicated that defendant wrote "fluently with paranoid content detailing his persecution by a group of black magic practitioners." Indeed, evaluation notes of his treatment documented that at the time of the incident, defendant reported hearing voices telling him repeatedly "kill him, kill him, kill him."

On June 19, 2007, defendant was diagnosed with schizophrenia, paranoid type or psychotic disorder not otherwise specified, and was declared unfit to proceed with his defense. By November 1, 2007, defendant's condition had stabilized and he was declared fit to proceed to trial. Defendant accepted responsibility for the crime and has expressed genuine remorse.

According to Jeremy Colley, M.D., defendant responded well to hospitalization and treatment with antipsychotic medication, and has not been violent since his arrest. He explained that "with appropriate psychiatric care defendant's risk is manageable and his prognosis fair."

At the time of the plea, the court expressed concerned about defendant's decision not to pursue a mental illness defense. Defendant explained to the court, with the aid of a Spanish speaking interpreter, that he would rather face a determinate prison sentence than the indeterminate amount of time he might spend in a psychiatric hospital. He was then permitted to enter a plea of guilty to the top count in the indictment, attempted murder in the second degree, with a promise of an 11-year prison sentence, with mental health treatment, and five years' post-release supervision.

We now reduce defendant's 11-year sentence to eight years, with continued mental health treatment and five years' post-release supervision (*see People v Rosenthal*, 305 AD2d 327, 329 [2003] [this Court "possesses broad, plenary powers to modify a sentence that is unduly harsh or severe under the circumstances, in the interest of justice, even though the sentence falls within the permissible statutory range"], citing *People v Delgado*, 80 NY2d 780, 783 [1992]; *see also* CPL 470.15 [2] [c]; *People v Garcia*, 195 AD2d 253, 254-255 [1993], *affd* 84 NY2d 336 [1994]; *People v Suitte*, 90 AD2d 80, 86 [1982]).

This incident represents defendant's first and only contact with the criminal justice system. For more than 40 years, defendant successfully managed his mental illness. It is evident that the stress of the loss of his mother, his inadvertent medication lapse, and the psychosis that resulted, conspired to cause this tragic incident. Defendant's treating psychiatrist opined

that defendant has insight into his mental condition and that with properly managed psychiatric care, he can continue to function normally.

While this Court appreciates the severity of the injury sustained by defendant's innocent victim, under the circumstances herein, we believe that an 11-year determinate prison term—for a man suffering from such severe mental illness that his capacity to form the required element of intent for the subject crime is questionable at best—is unduly harsh. Accordingly, we find that a reduction of his sentence, in the interest of justice, to an eight-year prison term is sufficient punishment under the circumstances of this case. Concur—Gonzalez, P.J., Acosta and Manzanet-Daniels, JJ.

Sweeny and Moskowitz, JJ., dissent in a memorandum by Sweeny, J., as follows: This defendant entered into a negotiated plea and agreed upon sentence. He did so with the advice of counsel and with the approval of an experienced and well respected judge. Other than a surfeit of compassion, there is no basis to reduce the sentence in the interest of justice.

The underlying facts are undisputed. Defendant, without any provocation or justification, tried to stab the victim, Manuel Einoa, with a knife. When defendant missed, the victim tried to run away. Defendant then grabbed a machete, chased Mr. Einoa and proceeded to repeatedly hack at his head and arm, inflicting massive injuries, including three severed fingers, and severely cutting and almost amputating the palm of Mr. Einoa's hand.

Defendant was arrested and charged with one count of attempted murder in the second degree and three counts of assault in the first degree. Rather than proceed to trial where he faced upwards of 25 years' imprisonment on each count, defendant accepted a plea to one count of attempted murder in the second degree (Penal Law § 110.00, § 125.25 [1]), with an agreed upon sentence of 11 years in prison, followed by five years' postrelease supervision, in full satisfaction of all charges.*

The sole basis for this appeal is excessive sentence. There is no claim that the plea was anything other than voluntarily, knowingly and freely entered into. Nor is there any claim that defendant was anything but fully competent when he pleaded.

A reviewing court should rarely reduce a sentence that is the result of a negotiated plea (*People v Lopez*, 190 AD2d 545 [1993]). Indeed the sentencing judge is in the best position to determine the appropriate sentence and his or her action should not be disturbed unless there is a clear abuse of discretion (*see*

---

* The People asked for a sentence of 12 years' imprisonment.

*People v Sheppard*, 273 AD2d 498, 500 [2000], *lv denied* 95 NY2d 908 [2000]). Although an appellate court has the broad plenary power to modify a negotiated sentence, it should do so only where the sentence was unduly harsh or severe (*id.*; *People v Delgado*, 80 NY2d 780 [1992]; *People v Suitte*, 90 AD2d 80 [1982]; CPL 470.15 [6] [b]). Indeed, "[a]bsent a clear abuse of discretion or the existence of extraordinary circumstances, a trial court's exercise of discretion in imposing what it considers to be an appropriate sentence will not be disturbed" (*People v May*, 301 AD2d 784, 786 [2003], *lv denied* 100 NY2d 564 [2003]). Moreover, a sentence which is within statutory parameters should not be deemed harsh and excessive in the absence of an abuse of discretion or extraordinary circumstances warranting reduction (*People v Mackey*, 136 AD2d 780 [1988], *lv denied* 71 NY2d 899 [1988]).

Here, there were no extraordinary circumstances warranting a reduction of sentence (*see People v Fair*, 33 AD3d 558 [2006], *lv denied*, 8 NY3d 945 [2007]; *People v McNeil*, 268 AD2d 611 [2000]; *People v Bass*, 261 AD2d 651 [1999]). A defendant's history of mental illness does not in itself constitute an extraordinary circumstance (*see People v Gibbs*, 280 AD2d 698, 699 [2001], *lv denied* 96 NY2d 829 [2001]).

All of the points the majority rely on in support of their argument to reduce the sentence were before Justice Yates, including defendant's own narrative of his upbringing and his mental health issues. It is undisputed that these factors were taken into consideration when the sentence was imposed. In fact, Justice Yates specifically included a direction for mental health treatment as part of the disposition. There is no claim that the Justice abused his discretion.

Particularly inexplicable is the argument that the imposed sentence of 11 years is too harsh, but that this harshness will be ameliorated by a reduction of only three years.

In short, the majority is not engaging in the limited review prescribed by the case law cited herein but instead is giving defendant a sentence reduction based solely upon sympathy. I submit that this is not our role. The defendant received a very fair sentence for the horrific acts in which he engaged—the very sentence he agreed to. It should not be disturbed.

