[982 NE2d 590, 958 NYS2d 670]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL Mox, Respondent.

Argued November 13, 2012; decided December 11, 2012

## APPEARANCES OF COUNSEL

*Sandra Doorley, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for appellant.

*Easton Thompson Kasperek Shiffrin LLP*, Rochester (*William T. Easton* of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed.

A Monroe County grand jury returned an indictment charging defendant with the crime of murder in the second degree (Penal Law § 125.25 [1]) for the killing of his elderly father. The indictment alleged that defendant caused his father's death by stabbing him and striking him in the head with a blunt instrument. Defendant had a documented history of mental illness and had been hospitalized in psychiatric treatment for much of the year preceding his father's death.

After approximately six months of psychiatric hospitalization, defendant was declared competent to stand trial pursuant to CPL article 730. Defendant had filed a notice of intent to present psychiatric evidence, pursuant to CPL 250.10, to demonstrate that, at the time of the alleged crime, he suffered from a mental disease or defect. While both defendant's and the People's psychiatrists concluded that defendant suffered from schizophrenia or schizoaffective disorder, the experts disagreed as to whether the condition rendered defendant unable to appreciate the nature or wrongfulness of his conduct. The People's psychiatrist, however, did find support for the affirmative defense of extreme emotional disturbance. The People subsequently offered a plea to the lesser included offense of manslaughter in the first degree under a theory of extreme emotional disturbance (Penal Law § 125.20 [2]) with a determinate sentence of 25 years plus five years' postrelease supervision and a waiver of the right to appeal. Defendant accepted the offer and pleaded guilty.

During the plea colloquy before County Court, defendant stated that on the day of the crime, he was "hearing voices"

and feeling painful bodily sensations, was "in a psychotic state" and had not taken his prescribed medication for several days. County Court accepted defendant's plea. Immediately following, defense counsel informed County Court that she had discussed "the potential defense of not guilty by reason of mental disease or defect with [defendant] at length and that he was willing to forgo that defense in order to accept this plea." County Court asked defendant if that was correct, and defendant replied, "Yes." The court did not inquire further. Represented by new counsel, defendant moved before sentencing to withdraw his plea pursuant to CPL 220.60. County Court denied the motion and sentenced defendant in accordance with the terms of the plea agreement.

With one Justice dissenting, the Appellate Division reversed defendant's conviction, holding that defendant's plea allocution raised doubts as to his guilt of first-degree manslaughter as it tended to negate the intent element of that crime. The majority further held that County Court failed to fulfill its duty to make further inquiry to ensure the plea was knowing and voluntary (*see People v Mox*, 84 AD3d 1723, 1724 [4th Dept 2011]).

"[W]hen a criminal defendant waives the fundamental right to trial by jury and pleads guilty, due process requires that the waiver be knowing, voluntary and intelligent" (*People v Hill*, 9 NY3d 189, 191 [2007], citing NY Const, art I, § 6). "[N]o catechism is required in connection with the acceptance of a plea" (*People v Goldstein*, 12 NY3d 295, 301 [2009]). However, "where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, . . . the trial court has a duty to inquire further to ensure [the] guilty plea is knowing and voluntary" (*People v Lopez*, 71 NY2d 662, 666 [1988]; *see People v Serrano*, 15 NY2d 304, 308 [1965] ["the requisite elements should appear from the defendant's own (factual) recital"]). Accordingly, "[w]here the court fails in this duty and accepts the plea without further inquiry, the defendant may challenge the sufficiency of the allocution on direct appeal" despite failing to do so in the form of a "postallocution motion" (*Lopez*, 71 NY2d at 666).

Here, defendant's statements that he was "in a psychotic state" and "hearing voices" on the day of the crime signaled that he may have been suffering from a mental disease or defect at that time and, consequently, was unable to form the intent necessary to commit first-degree manslaughter under Penal

Law § 125.20 (2) (*see* Penal Law § 40.15; *People v Almonor*, 93 NY2d 571, 580 [1999] [the affirmative defense of insanity "contemplates that as a result of mental disease or defect, the defendant lacks substantial capacity to know or appreciate either the nature and consequences of such conduct or that such conduct was wrong"]). County Court therefore had a duty under *Lopez* and *Serrano* to inquire further into whether defendant's decision to waive a potentially viable insanity defense was an informed one such that his guilty plea was knowing and voluntary.\* The court's single question to defendant verifying that he discussed that defense with his attorney and opted not to assert it was insufficient to meet that obligation. Thus, County Court erred in accepting defendant's guilty plea (*see Lopez*, 71 NY2d at 666).

SMITH, J. (dissenting). This Court, speaking through Judge Breitel, observed 45 years ago that plea allocutions are best evaluated through "a sound discretion exercised in cases on an individual basis" rather than by "a uniform procedure which, like as not, would become a purely ritualistic device" (*People v Nixon*, 21 NY2d 338, 355 [1967]). The majority today forgets this wise admonition and erects the rule of *People v Lopez* (71 NY2d 662 [1988]) into a rigid requirement that a guilty plea must be vacated when the words spoken in the allocution leave significant doubt as to the defendant's guilt. This case is a good illustration of why such rigid rules are unwise.

I agree with the majority that defendant's allocution here, in which he said among other things that, when he killed his father, he was "hearing voices," was "off [his] medication" and was "in a psychotic state," left open the possibility that he could be found by a jury to have been legally insane. The record makes quite clear, however, that defendant was aware of the possibility of an insanity defense, had discussed it with his lawyer, and had decided to forgo it after a negotiation in which the People agreed to accept the partial defense of "extreme emotional disturbance," reducing what would otherwise be a

---

\* The dissent opines that we have enacted a "requirement that a guilty plea must be vacated when the words spoken in the allocution leave significant doubt as to the defendant's guilt" (dissenting op at 939). But that statement overlooks the crux of *Lopez* and of our holding today: Vacatur is warranted where such doubt is raised *and* the trial court takes no or inadequate measures to resolve it and ensure that the defendant's plea is knowing and voluntary. The burden of further inquiry that *Lopez* places on the trial judge, even one who is "harried [and] calender-conscious" (dissenting op at 940, quoting *Nixon*, 21 NY2d at 354), is minimal.

murder to a manslaughter conviction (*see* Penal Law §§ 125.25 [1] [a]; 125.20 [2]). I see no reason why defendant was not free to make that choice, or why he should not now be bound by the terms of his plea bargain.

The Appellate Division found this to be "one of those rare cases" mentioned in *Lopez* in which the allocution "cast[s] significant doubt upon the defendant's guilt" (*see People v Mox*, 84 AD3d 1723, 1724 [4th Dept 2011], quoting *Lopez*, 71 NY2d at 666), and the majority here apparently agrees. But the words of *Lopez* should be read in their full context:

> "In that rare case, however, where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or *otherwise calls into question the voluntariness of the plea*, we have held that the trial court has a duty to inquire further *to ensure that defendant's guilty plea is knowing and voluntary*" (71 NY2d at 666 [emphasis added]).

Thus the *Lopez* rule was designed as a safeguard to be sure that the defendant made a well-informed and voluntary choice to plead guilty; where he clearly did make such a choice, *Lopez* should not be used to invalidate the plea.

A rule that an allocution may never cast "significant doubt upon the defendant's guilt" will often be unworkable in the case where a defendant has mental problems that may or may not rise to the level of insanity. The question of whether a defendant was legally insane or merely extremely emotionally disturbed is usually less simple than the question of whether he did or did not do the act of which he is accused. At a trial, the question of whether a defendant was insane is one to be decided by the factfinder, usually with the help of expert psychiatric evidence. It is hard to see how it can, in most cases, be resolved simply by questioning the defendant about his own, indisputably impaired, mental state. And it is particularly true, in cases of this kind, that the advice of the defense lawyer—which will generally be informed, as it was here, by expert reports—is more valuable than the allocution in assuring the voluntariness of a plea. To quote again Judge Breitel's opinion in *Nixon*:

> "[I]f independent and good advice in the interest of the defendant is the goal, it is more important that he consult with competent counsel than that a harried, calendar-conscious Judge be the one to perform

the function in displacement of the lawyer" (21 NY2d at 354).

The record here shows that defendant made a knowing and voluntary decision, after discussion with his lawyer, to plead guilty to a reduced charge. His guilty plea should be reinstated.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur; Judge SMITH dissents in an opinion.

Order affirmed, in a memorandum.