People v Ashcroft (2024 NY Slip Op 06077)

People v Ashcroft

2024 NY Slip Op 06077

Decided on December 5, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 5, 2024

110532
[*1]The People of the State of New York, Respondent,
v
Eschell Ashcroft, Appellant.

Calendar Date:October 18, 2024

Before:Egan Jr., J.P., Clark, Ceresia, Powers and Mackey, JJ.

Craig S. Leeds, Albany, for appellant.
Emmanuel C. Nneji, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the County Court of Ulster County (Donald A. Williams, J.), rendered June 1, 2018, upon a verdict convicting defendant of the crime of aggravated harassment of an employee by an incarcerated individual.
On November 26, 2016, defendant was serving a prison sentence at the Eastern NY Correctional Facility in the Town of Wawarsing, Ulster County and was housed alone in a cell in the Special Housing Unit. That morning, defendant papered over the window to his cell and a feed-up hatch used to provide food to him and refused to respond to correction officers, preventing them from checking in on him and ensuring his safety. At approximately 10:36 a.m., three officers went to the door of defendant's cell, with one knocking on the door and the others crouching near the leg iron hatch on the door in an effort to open it and try and see what was going on inside. While the officers were crouching near the hatch, a liquid was ejected from it and hit the left side of one of them. The officers all believed, and testing later confirmed, that the liquid was urine.
As a result of the incident, defendant was charged in an indictment with aggravated harassment of an employee by an incarcerated individual (see Penal Law former § 240.32).[FN1] Defendant thereafter engaged in motion practice that included unsuccessful applications to dismiss the indictment and for suppression and/or preclusion of statements he made after the incident occurred. The matter then proceeded to a jury trial, at the conclusion of which defendant was found guilty as charged. County Court sentenced defendant, as a second felony offender, to a prison term of 2½ to 5 years that would run consecutively to the prison sentence he was already serving. Defendant appeals.
We affirm. At the outset, defendant's contentions that the verdict is not supported by the evidence are meritless. The three correction officers who were outside of the cell solely occupied by defendant when the incident occurred all testified. Their testimony, which was fully corroborated by video footage from nearby security cameras, reflected that a liquid was thrown out of the cell and hit one of the officers crouching near the leg iron hatch. The testimony and video footage indicated that a loud bang was heard from inside the cell around the time that the liquid was thrown out, and the video footage shows both the officers' reaction to the liquid being tossed and the liquid itself on the floor outside of the cell. The video footage and testimony showed that the officers walked away to obtain care for the officer who had been struck, while defendant then began screaming "a lot of obscenities." The witnesses also included a correction sergeant who was in the area about two hours after the incident and testified to overhearing defendant talking to another incarcerated individual through his cell window about "thr[owing] piss on th[e] bitch ass" officer who had been looking through the hatch earlier. The three [*2]officers present for the incident all testified that they believed that the officer had been hit by urine based upon its odor, and a forensic scientist testified that she tested clippings from that officer's shirt and obtained positive results for the presence of urine.
We have no difficulty concluding that, to the extent that the issue is preserved, the foregoing proof is legally sufficient to establish that defendant threw urine onto the officer with the requisite "intent to harass, annoy, threaten or alarm a person in a [correctional] facility whom he . . . knows or reasonably should know to be an employee of such facility" (Penal Law § 240.32; see People v Banch, 198 AD3d 1186, 1189 [3d Dept 2021], lv denied 37 NY3d 1144 [2021]). The jury credited that extensive evidence of guilt over defendant's denials of having thrown any liquid and the lack of proof definitively tying him to DNA on the officer's urine-soaked shirt.[FN2] Viewing the evidence in a neutral light and deferring to the jury's assessment of credibility, we are further satisfied that the verdict is supported by the weight of the evidence in all respects (see People v Banch, 198 AD3d at 1189; People v Smith, 96 AD3d 1088, 1088-1089 [3d Dept 2012], lv denied 20 NY3d 936 [2012]).
Next, we reject defendant's claim that the indictment was legally insufficient on its face. As County Court noted, the indictment did not explicitly state all of the elements of the charged offense because it failed to allege that defendant was "[a]n inmate" when he engaged in the charged conduct (Penal Law former § 240.32). The indictment did explicitly name Penal Law § 240.32 as the crime charged, however, and that incorporation by reference to the statute sufficiently apprised defendant of the charge to render the indictment jurisdictionally valid (see People v D'Angelo, 98 NY2d 733, 734-735 [2002]; People v Wheeler, 216 AD3d 1314, 1316 [3d Dept 2023], lv denied 40 NY3d 1082 [2023]). County Court therefore acted properly in denying defendant's motion to dismiss the indictment on jurisdictional grounds and granting the People leave to amend the indictment to correct the omission (see CPL 200.70 [1]).
Turning to the Sandoval compromise rendered by County Court, it barred the People from questioning defendant about 1991 and 2001 convictions should he testify. County Court did permit cross-examination regarding some of defendant's other prior convictions, however, upon the ground that they called his credibility into question by showing his willingness to place his own interests above those of society. The court specifically allowed inquiry regarding the existence, but not the details, of an unnamed 2005 felony conviction, and broader inquiry regarding the existence and underlying facts of a 2003 conviction for criminal sale of a controlled substance in the third degree, a 2002 conviction for intent to obtain transportation without paying, and a 1993 conviction for attempted robbery in the second degree. County [*3]Court properly balanced the probative value of the 2005 conviction against the serious potential for undue prejudice — caused by the fact that the conviction was for the same offense charged here and arose out of similar conduct — by precluding the People from referencing the name of the offense or the underlying facts. County Court was further free to, and did, reject defendant's contention that the 1993, 2002, 2003 and 2005 convictions were too remote in time for the simple reason that "defendant was incarcerated for substantial periods" throughout the 1990s and 2000s and had been imprisoned continuously since 2002 (People v Kirton, 36 AD3d 1011, 1013 [3d Dept 2007], lv denied 8 NY3d 947 [2007]). Under those circumstances, we are satisfied that "the court's compromise was a provident exercise of the court's discretion inasmuch as it reflected a measured balance of the probative value and limited the potential prejudicial effect of the evidence in question" (People v Lloyd, 118 AD3d 1117, 1122 [3d Dept 2014], lv denied 25 NY3d 951 [2015]; see People v Gilliam, 36 AD3d 1151, 1153 [3d Dept 2007], lv denied 8 NY3d 946 [2007]).
Defendant further suggests that County Court erred in declining to suppress oral statements he made around the time of the incident that were captured on surveillance video footage of the hall outside of his cell and in failing to preclude the later statements he made to another incarcerated individual that were overheard by a correction sergeant. With regard to the recorded statements, County Court credited testimony at the suppression hearing that defendant and other incarcerated individuals in the Special Housing Unit were notified that they were under "constant surveillance" and that security cameras were "record[ing] essentially, everything" on the unit. As defendant had been warned that the area was "being monitored and recorded," County Court properly determined that he had no reasonable expectation of privacy in any communications that might be picked up by nearby security cameras so as to implicate the protections of the Fourth Amendment (People v Diaz, 33 NY3d 92, 99-100 [2019], cert denied ___ US ___, 140 S Ct 394 [2019]; see Telesford v Annucci, 693 Fed Appx 1, 2-3 [2d Cir 2017]; People v Russ, 162 AD3d 1306, 1306-1307 [3d Dept 2018]). Defendant's related contention that the recording and disclosure of his statements separately constituted a due process violation is without merit (see e.g. People v Quinn, 210 AD3d 1284, 1286-1287 [3d Dept 2022], lv denied 39 NY3d 1079 [2023]). Defendant similarly had no reasonable expectation of privacy with regard to statements he made through his cell window to another incarcerated individual, and County Court correctly concluded that the People were not obliged to give notice of their intent to use that statement pursuant to CPL 710.30 because it was only overheard by a passing correction sergeant and "was not made 'to a public servant' " (People v Cole, 24 AD3d 1021, 1025 [3d [*4]Dept 2005], lv denied 6 NY3d 832 [2006], quoting CPL 710.30 [1] [a]; see People v Phoenix, 115 AD3d 1058, 1062-1063 [3d Dept 2014], lv denied 23 NY3d 1024 [2014]).
Defendant's contentions relating to the conduct of the trial do not demand extended discussion. County Court appropriately directed that defendant be restrained during the trial — which the People demonstrated was necessary in this case because of defendant's extensive disciplinary history and penchant for assaultive and disruptive behavior while imprisoned — while minimizing the potential for prejudice to defendant by placing skirts around the courtroom tables to obscure his restraints and giving a cautionary instruction to the jury (see People v Alexander, 127 AD3d 1429, 1432 [3d Dept 2015], lv denied 25 NY3d 1197 [2015]; People v Stokes, 290 AD2d 71, 74 [3d Dept 2002], lv denied 97 NY2d 762 [2002], cert denied 537 US 859 [2002]). Defendant's claims of prosecutorial misconduct arising out of comments made by the People during summation are unpreserved given his failure to lodge a timely objection to them (see People v Paige, 211 AD3d 1333, 1337 [3d Dept 2022], lv denied 39 NY3d 1143 [2023]; People v Morton, 198 AD3d 1176, 1180 [3d Dept 2021], lv denied 37 NY3d 1163 [2022]). In any event, while some of the People's remarks in summation would have been better left unsaid, we cannot say that they were part of "a flagrant and pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial" and require reversal (People v Lewis, 224 AD3d 1143, 1153 [3d Dept 2024], lv denied 42 NY3d 939 [2024]). Defendant's various contentions regarding the jury charge and the handling of notes from the jury are similarly unpreserved and are, in any event, without merit (see People v Abussalam, 196 AD3d 1000, 1009 [3d Dept 2021], lv denied 37 NY3d 1144 [2021]; People v Smith, 193 AD3d 1260, 1267 [3d Dept 2021], lv denied 37 NY3d 968 [2021]).
As for defendant's remaining complaints, although he cites an impressive array of perceived flaws in the performance of trial counsel, we cannot say that he received the ineffective assistance of counsel in any respect. To the contrary, our review of the record as a whole confirms that counsel provided meaningful representation in a difficult case where there was overwhelming testimonial, video and forensic evidence of defendant's guilt (see People v Rashid, 166 AD3d 1382, 1385 [3d Dept 2018], lv denied 32 NY3d 1208 [2019]). Finally, assuming, without deciding, that defendant's challenge to the sentence remains live despite his release from prison due to the apparent expiration of that sentence (but see People v Cotto, 218 AD3d 1021, 1026 [3d Dept 2023], lv denied 40 NY3d 1039 [2023]), we are unpersuaded that the sentence was unduly harsh or severe (see People v Banch, 198 AD3d at 1190).
Clark, Ceresia, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The offense originally referenced inmates as opposed to incarcerated individuals but, during the pendency of this appeal, was renamed aggravated harassment of an employee by an incarcerated individual (see Penal Law § 240.32, as amended by L 2021, ch 322, § 106).

Footnote 2: The forensic scientist who testified for the People stated that she did not test clippings from the officer's shirt for DNA because urine is generally not a good source for DNA, but defendant's expert was able to recover genetic material from the officer's shirt and conduct DNA testing. She could not identify the major contributor to DNA found on the shirt clippings — an unsurprising development since she did not have a DNA sample from the officer who had been wearing the shirt — and her testing to identify a second, minor contributor of DNA material on the shirt was inconclusive.